UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

24 HOUR FITNESS USA, LLC, a Foreign Limited
Liability Company D/B/A 24 HOUR FITNESS

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, 24 HOUR FITNESS USA, LLC, a foreign limited liability company d/b/a 24 HOUR FITNESS (hereinafter referred to as "24 HOUR FITNESS"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)      This action is also brought pursuant to 28 C.F.R. Part 36.

2)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)      Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

1

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a membership subscription.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)      Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)      Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)      At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)      Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)      In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, 24 HOUR FITNESS, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

20)     Defendant, 24 HOUR FITNESS, is a company that sells gym memberships. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "24 HOUR FITNESS".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.24hourfitness.com. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing

information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)    Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)    Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)    Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of February 2025, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

**24 Hour Fitness**  https://www.24hourfitness.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 130.0.6723.117

Screen Reader: NVDA v. 2024.4

Video Recorder: OBS Studio 30.2.3

**Barriers**

**1. Navigation and Bypass Barriers**

- **Bypass Mechanism Absence**: Users are unable to bypass repetitive blocks like the Main Navigation and Footer on multiple pages, including the Registration and Find a Gym sections, leading to inefficient navigation (Violations 2, 3, 5, 8, 14).

- **Focus Order Issues**: Focus jumps to unexpected areas, such as the Footer instead of the top of the page, or allows navigation to underlying elements in modals, disrupting the intended navigation flow (Violations 7, 12, 13).

**2. Screen Reader and Information Accessibility**

- **Information Not Conveyed**: Important content in Membership, Pricing, and Product Detail sections lacks descriptive information for screen readers, leaving visually impaired users without critical details on membership levels, benefits, and product specifications (Violations 2, 10, 15).

- **No Confirmation or Role Descriptions**: Screen readers do not announce confirmation for actions, such as selecting filters or membership options, leaving users uncertain about their choices (Violations 4, 10, 16).

### 3. Keyboard Accessibility

- **Non-Operable Keyboard Elements**: Key elements like the "Skip to Main Content" link, price selection in membership forms, and filters in search forms are inaccessible via keyboard, preventing full interaction (Violations 1, 6, 14).
- **Focus Indicator Absence**: Club Card buttons and other interactive elements lack a visible focus indicator, making it difficult for keyboard users to follow their navigation path (Violation 11).

### 4. Error Identification and Input Guidance

- **No Error Announcements**: Screen readers do not announce invalid entries or whitespace errors in fields like Email, Date of Birth, and Membership Number, leading to uncorrected input issues (Violations 4, 17, 18, 20, 21, 22).
- **Missing Instructions for Input**: Required fields in the About You form lack guidance on input format, increasing the likelihood of errors during form submission (Violation 17).

### 5. Visual Contrast

- **Low Contrast**: Text in the Disclaimer section has insufficient contrast against the background, making it difficult to read for users with visual impairments (Violation 1).

## Violation 1: 1.4.3 Contrast (Minimum)

The visual presentation of text and images of text has a contrast ratio of at least 4.5:1, except for the following: Large Text: Large-scale text and images of large-scale text have a contrast ratio of at least 3:1; Incidental: Text or images of text that are part of an inactive user interface component, that are pure decoration, that are not visible to anyone, or that are part of a picture that contains significant other visual content, have no contrast requirement.

Text within the Disclaimer Division has low contrast against the background, making it difficult for users with visual impairments to read.

Applicable WCAG 2.1 Standard at Issue: 1.4.3 Contrast (Minimum) (Level AA)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYOW8xuzhoxBlZAGoL1fkAABFB0_0TFsZ02qJlLFMXudOg

## Violation 2: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

Screen readers do not convey the informational content within the Membership Cards and Membership Information blocks, leaving visually impaired users without essential details about membership perks.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Eby_Dy10q-1Ln_rFgtjf6gEBMJyrzR8RizBunTw_e8I2fQ

**Violation 3: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

The footer block cannot be skipped by keyboard users, and the "Back to Top" button is unreachable, resulting in inefficient navigation for keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbI0uTAcsP1DmxqQP_287dUBnUkAD9ur_ja36xpYr13mIw

**Violation 4: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

Screen readers do not announce whitespace characters in the email field, and there is no password verification option, which can lead to undetected input errors and login issues.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfmHYPQH7uxHg5nrcQeLw3ABK7Mx0F_5 EZb9HcRVHb1nLg

**Violation 5: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The "Skip to Main Content" link is neither visible nor operable, preventing keyboard users from quickly accessing the main content on the Registration page.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/registration.html?source=login#/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETY78szC3nhNixEQRc3Ox5cBwtKuUqJbCi HxY6NsHw6MOQ

**Violation 6: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

The Main Navigation Menu in the Registration page lacks a bypass mechanism to reach the main content, requiring users to manually navigate through all menu items.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/registration.html?source=login#/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUIOJJis8XxHmtI9rcmAMKABXbcL2KXjzg Mwlu3bhpKzVQ


**Violation 7: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is directed to the footer rather than the top of the page, disrupting the expected navigation flow for users relying on keyboard navigation.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXj3K3Iu4fhJjJkTTXGX5WsB8HI0t0KwocB

LdXgmx4-WEQ

### Violation 8: 2.4.1 Bypass Blocks

A mechanism is available to bypass blocks of content that are repeated on multiple Web

pages

There are no bypass mechanisms to skip the main navigation menu block and skip to the

search form.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/gyms/find-a-gym/?source=membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERyP_Y_glAlPuViZq_vjduQBNG29Mi62vC9

kggDjUxHj5Q

### Violation 9: 3.3.2 Labels or Instructions

Labels or instructions are provided when content requires user input.

The screen reader does not provide instructions on how to operate the search form,

reducing efficiency and usability.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/gyms/find-a-gym/?source=membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXTr6unRXF5GmBxccrxfOYYBZK8XB8aPx

6IYJl9KQTkAfw

**Violation 10: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user

agents, including assistive technologies.

Screen readers do not confirm when a filter is selected, making it unclear to users if their

selection has been successfully applied.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/gyms/find-a-gym/?source=gymsnearme&location=33184

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQE41RuWDVJGla10_U1dU38BPgI2s45cF_t

GrcY8CqEizg

**Violation 11: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus

indicator is visible.

Buttons and links within the Club Cards section lack visible focus indicators, making it

difficult for keyboard users to track their position on the page.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/gyms/find-a-gym/?source=gymsnearme&location=33184

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETEY-

lNm3WlHrjMpvrp0iu4B66ES1BqcTMriah10Jpi-Gg


**Violation 12: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

Users can navigate underlying page elements while the Club List Modal is open,

disrupting focus and creating navigation confusion.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EV_ZIIFguJJEsfKbYwxMDjwBUKR-

4TSOVPGLlVwIgHkBNQ


**Violation 13: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning

or operation, focusable components receive focus in an order that preserves meaning and

operability.

Focus escapes from the Club List Modal to elements on the underlying page, breaking the intended interaction with the modal content.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfXwTgxpZU9MnQIf_A7OFDEB9zSPkVZZqE-v5JMFrIULlA

## Violation 14: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints. Keyboard users are unable to select price options in the Membership Selection Form, preventing them from completing their selection.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EeShmBifTDNGlfJlVH0OoCoBPubQ_rj70GGRlx9OuonuzQ

## Violation 15: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

Screen readers do not convey information about Platinum or Gold membership options and their respective prices, leaving visually impaired users without critical information for decision-making.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/membership

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EadHGc4VMc5GhcRJWdBbNEsBwb-O_7NYaxbkH_xkEuQ2Xw


**Violation 16: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

Screen readers do not confirm when a selection is made in the Add Membership dropdown list, leaving users uncertain if their choice has been registered.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/add-ons

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EfHgXKC9dYZOgbqEe2ymvuQBeAgHr4gM

yVGtk3eIUzjd0A

## Violation 17: 3.3.2 Labels or Instructions

Labels or instructions are provided when content requires user input.

Screen readers do not announce required fields or input format guidance in the About

You form, making it difficult for users to enter information correctly.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/about-you

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ebc__XTvtclLn5S7CtnFCrQBXdbuDuS47tkkl

dn--yYxCA

## Violation 18: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

Screen readers fail to announce invalid values in fields, leaving users unaware of errors

and unable to correct their input.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/about-you

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdlTSuH2JK5GrsbpWd35n4cB6YfSiTrJfRdvJ
imPcekKRQ


**Violation 19: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading
sequence can be programmatically determined.

Items in the State dropdown list are not visible, creating issues for users attempting to
select a state from the list.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/about-you

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWNWske3p69Pil6tHXNnRjQBMiAWb3xJG
zESmdwgRsJ5YQ


**Violation 20: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the
error is described to the user in text.

Screen readers do not communicate errors for invalid characters in name or email fields,
or for invalid date and address values, which could lead to submission issues.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/about-you

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWDARUqNdjZHh5myITQc-7cBQ-

Zh1RHsf1V6XoX6zzCWuA


**Violation 21: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

Screen readers do not notify users about an invalid Date of Birth entry, preventing successful account creation due to unaddressed errors.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/sales24/#/about-you

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ebp5IN22Vz1Ijmkor29n4q4BYLCwzO9lPmL

Vm7AdKDeuCg


**Violation 22: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

Screen readers do not announce invalid entries for the member number and birthdate fields, leaving users unaware of errors and unable to correct them.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.24hourfitness.com/registration.html?source=login#/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcZFyp2hYWpBiapz_ZJ52fQB5lASDs2lTnY

WtKuSoHCXkA

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual

disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)      Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)      Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)      Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)      Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

54)      Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)      Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)      Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in February and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

    i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

    ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period

prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)    WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.    A declaration that Defendant's website is in violation of the ADA;

b.    An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to

---

[1] 

conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

> **Visit or Interact with the Services**. In addition to the personal information you provide directly to us, we also collect information from you automatically as you use our Services via cookies, pixels, and similar tracking technologies. This includes the following internet or other electronic network activity information.
>
> We may use "pixel tags," which are small graphic files that allow us to monitor the use of our websites. A pixel tag can collect information such as the IP address of the computer

that downloaded the page on which the tag appears; the URL of the page on which the pixel tag appears; the time the page containing the pixel tag was viewed; the type of browser that fetched the pixel tag; and the identification number of any cookie on the computer previously placed by that server. When corresponding with you via HTML capable email, we may use "format sensing" technology, which allows pixel tags to let us know whether you received and opened our email.

We use essential, performance, marketing, and analytics cookies to collect your usage, device, and location information when you interact with the Services. A cookie is a small file containing a string of characters that is sent to your computer when you visit a website. When you visit the website again, the cookie allows that site to recognize your browser. Cookies may store unique identifiers, user preferences and other information. We use this information to: (i) track your use within the Services; (ii) enhance user experience; (iii) conduct analytics to improve the Services; (iv) prevent fraudulent use of the Services; (v) diagnosis and repair Services errors, and, in cases of abuse, track and mitigate the abuse; (vi) provide targeted advertising; (vii) learn when you have checked into one of our Clubs; and (vii) provide location-based services, including, for example, filtering Clubs, group classes, and instructors based on your approximate location. Third party marketing and analytics cookies may be considered a sale or sharing under the California Privacy Rights Act ("CPRA") and under the Colorado Privacy Act ("CPA").

Particular third-party cookies to note on our Website include: Google Analytics, DoubleClick, Adobe Analytics, Meta Pixel, and TikTok Pixel. For California or Colorado residents, you can manage your cookie preference by visiting Do Not Sell or Share My Personal Information. In general, you can disable cookies by setting your browser to

refuse cookies or indicate when a cookie is being sent. Please note, if you opt out of these targeted advertising cookies, your opt out will be specific to the web browser, app, or device from which you accessed the opt out. If you use multiple devices or web browsers, you will need to opt out of each browser or device that you use. To learn more about your privacy choices, please see **YOUR INFORMATION CHOICES.**

- **Google Analytics**. We use Google Analytics to collect information on your use of our Services for its improvement. To collect this information, Google Analytics installs cookies on your browser or reads cookies that are already there. Google Analytics also receives information about you from applications you have downloaded that partner with Google. We do not combine the information collected through the use of Google Analytics with personal information. Google's ability to use and share information collected by Google Analytics about your visits to our Website or to another application which partners with Google is restricted by the Google Analytics Terms of Use and Privacy Policy. To prevent your data from being used by Google Analytics, you can download the Google Analytics opt out browser add-on, which can be accessed here. For California or Colorado residents, to opt out, please visit Do Not Sell or Share My Personal Information

- **DoubleClick**. We utilize DoubleClick by Google to serve ads based on a user's prior visits to our Website and Mobile App. Each visitor to our Website and Mobile App receives a different cookie, and the information collected by the cookie is used to generate conversion statistics and allows us to see the total number of individuals who clicked on our ads. DoubleClick enables Google and

its partners to serve ads to you based on your visits to our Website and Mobile App in addition to other websites on the Internet. Please review Google's Privacy Policy for additional information on how Google uses the information collected. Such sharing may be deemed a sale under the CPRA. To opt out of targeted advertising by Google and this sharing, you can go to Google's Ad Settings or you can install the DoubleClick opt out browser plugin. For California or Colorado residents, to opt out, please visit Do Not Sell or Share My Personal Information.

- **Adobe Analytics**. We utilize Adobe Analytics to collect information on your interaction with our Services, including your web browsing activity, device information, IP address (which may be used to approximate your general location), the URL of the web page from which you navigate to our Website, the web search you performed that led you to our Website, social media profile information, purchasing history, and whether you clicked on any of our online advertisements. This information is collected via third party cookies and similar technologies, such as web beacons (also known as tags or pixels) that Adobe Analytics sets on your web browser. We use this information to manage our online content, improve the performance of our Services, and conduct targeted advertising campaigns. Please review Adobe's Privacy Policy for additional information on how Adobe Analytics uses the information collected. To prevent your data from being used by Adobe Analytics, you may opt out here. For California or Colorado residents, to opt out, please visit Do Not Sell or Share My Personal Information.

- **Meta Pixel**. We use Meta Pixel to serve you ads on your social media based on your browsing behavior. Meta Pixel sets a cookie on your device that allows your behavior to be tracked after you have been redirected to the Website by clicking on a Facebook ad. This enables us to measure the effectiveness of Facebook ads for statistical and market research purposes and to provide targeted advertising. We do not have access to the information collected through the Meta Pixel. The information collected via Meta Pixel is stored and processed by Meta. Meta may link this information to your Facebook account and use it for its own promotional purposes in accordance with Facebook's Data Usage Policy. You can opt out of displaying Facebook ads and sharing by visiting your Facebook Ad Settings. For California or Colorado residents, to opt out, please visit Do Not Sell or Share My Personal Information

- **TikTok Pixel**. We utilize TikTok Pixel to collect information about how users interact with our Services. We use this information to serve targeted ads based on users' interaction with our Services and to measure the performance of our advertising campaigns conducted through TikTok. Please review TikTok's Privacy Policy for additional information on how TikTok uses the information it collects. For California or Colorado residents, to opt out of targeted advertising by TikTok and this sharing, please visit Do Not Sell or Share My Personal Information.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his

computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.


WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.


Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434